IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PENN-DION CORPORATION,

                        Plaintiff,

v.

GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK, et al.,

                        Defendants.

CIVIL ACTION
NO. 17-4634

**OPINION**

**Slomsky, J.**                                                                                                   July 15, 2019

## I.    INTRODUCTION AND BACKGROUND

Plaintiff Penn-Dion Corporation ("Plaintiff" or "Penn-Dion") brought this suit against its insurance provider, Great American Insurance Company of New York ("Defendant" or "Great American") and Great American's insurance adjuster,[1] Engle Martin & Associates, Inc., ("Engle Martin") (collectively, "Defendants"). This case stems from an insurance coverage dispute that originated from a fire in a commercial building owned by Plaintiff, located in Philadelphia, Pennsylvania. Immediately after the fire, the Philadelphia Department of Licenses and Inspections inspected the damaged building and issued to Plaintiff two notices that collectively contained thirty-six violations of the Philadelphia Building Code ("Code"). Due to the fire damage and Code violations, tenants were not permitted to occupy the building for several weeks, which resulted in loss of business to Penn-Dion.

---

[1] Great American hired Engle Martin as its adjuster to investigate the damage to Plaintiff's building and to calculate the appropriate payout amount under its insurance policy.

1

After the fire, Penn-Dion made three claims under its commercial insurance policy with Great American. In the first claim, Penn-Dion sought payment for fire damage and the cost of upgrades to cure the Code violations (the "First Claim"). Great American settled this claim with Penn-Dion for $48,682. The second claim was for loss in value to the undamaged parts of the building as a result of the fire (the "Second Claim"). Great American denied this claim. Penn-Dion's third claim, which Great American also denied, was for business income loss and extra expenses that resulted from the fire damage and Code violations (the "Third Claim").[2]

Disagreeing with Great American's interpretation of the insurance policy and its decision on each disputed claim, Penn-Dion filed this lawsuit in the Court of Common Pleas of Montgomery County. The case was removed to this Court based on diversity of citizenship jurisdiction.[3] (Doc. No. 1.)

In its Third Amended Complaint ("Complaint"),[4] Plaintiff alleged: Fraud against Great American (Count I), Fraud against Engle Martin (Count II), Negligence against Engle Martin (Count III), Breach of Contract against Great American (Count IV), Bad Faith against Great American (Count V), Civil Conspiracy against Great American and Engle Martin (Count VI), and

---

[2] Despite denying coverage of the Second and Third claims, Great American offered Plaintiff $40,000 to release its business income loss and extra expense claim. (Doc. No. 28 ¶ 71; Doc. No. 28-2 at 21-22.) Plaintiff did not accept this offer.

[3] Removal was pursuant to 28 U.S.C. § 1332(a)(1), which provides "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." (Doc. No. 1.)

[4] On November 17, 2017, Plaintiff filed its first Amended Complaint. (Doc. No. 11.) A Second Amended Complaint was filed on March 12, 2018. (Doc. No. 20.) On May 30, 2018, the Third Amended Complaint, which is the operative one, was filed. (Doc. No. 28.)

Concerted Action under Section 876 of the Restatement (Second) of Torts against Great American and Engle Martin (Count VII). (See Doc. No. 28.)

In an Opinion and Order dated January 31, 2019, Counts I, II, III, IV, and VII were dismissed. (Doc. Nos. 33, 34.) Accordingly, the following Counts remain in the case: (1) Bad Faith against Great American, pursuant to 42 Pa.C.S.A. § 8371[5] (Count V) and (2) Civil Conspiracy against Defendants (Count VI).

The parties are currently engaged in fact discovery. On February 25, 2019, Plaintiff served its Request for Production of Documents on Great American.[6] (Doc. No. 40-2 at 1.) Great American produced 3,352 pages of documents in response,[7] including three reports that Engle Martin's claims adjuster, Matthew Cericola ("Cericola"), prepared after investigating each of Plaintiff's claims on Great American's behalf. (Doc. No. 41 at 2.) Great American also included a privilege log, showing documents that it had either redacted or withheld from production because

---

[5] 42 Pa. C.S.A. § 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured     in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

[6] Although Engle Martin is still a Defendant in the case, Plaintiff's Request for Production of Documents was served only on Great American.

[7] In Plaintiff's Motion to Compel, it states that Great American produced these documents on April 12, 2019. (Doc. No. 40-2 at 1.) Great American notes that it produced the documents on April 1, 2019. (Doc. No. 41 at 2.)

they contained information about its "reserve"[8] amount, Cericola's "mental impressions," and notes containing "trade secret and/or confidential proprietary information." (Doc. No. 40-4.)

The parties dispute whether such redactions and withholdings are proper. Before the Court is Plaintiff's Motion to Compel Production of Documents (Doc. No. 40), and Defendant Great American's Response in Opposition (Doc. No. 41). For the reasons discussed infra, Plaintiff's Motion to Compel (Doc. No. 40) will be granted in part and denied in part.

## II.  DISCUSSION

Plaintiff argues that (1) an insurance company's reserve information is not protected in a case where bad faith is alleged because such information evidences how a company valued a policyholder's claim, and therefore is relevant in determining whether it acted in bad faith in handling the claim; (2) redactions of Cericola's mental impressions are improper because they are also relevant to determine whether Great American acted in bad faith;[9] and (3) according to Pennsylvania Rule of Civil Procedure 4012,[10] Great American was not permitted to redact trade

---

[8]  A reserve is the amount of money an insurance company sets aside to pay a policyholder who has filed a claim or is expected to file a claim under the policy.

[9]  As noted previously, Great American hired Engle Martin to investigate Plaintiff's claims. Cericola, an Engle Martin employee, therefore is an agent of Great American.

[10]  Pennsylvania Rule of Civil Procedure 4012 provides, in relevant part:

> (a) Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following:
>
>     . . .
>
>     (9)  that a trade secret or other confidential research, development or commercial information shall not be disclosed or be disclosed only in a designated way.

4

secrets in its response to the request for production of documents because it did not file the requisite motion or protective order with the Court. (Doc. No. 40-2.)

Great American opposes turning over to Plaintiff reserve information and Cericola's mental impressions.[11] (Doc. No. 41.) It argues that the mere assertion of a bad faith claim does not warrant production of any of the withheld information. (Id. at 2-5.) Specifically, Great American argues that (1) reserve information is not relevant to the issue presented in Plaintiff's bad faith claim; and (2) Cericola's mental impressions are protected by the work-product privilege codified in Federal Rule of Civil Procedure 26.[12]

**A. Bad Faith Claim**

Plaintiff's argument for production of reserve information and Cericola's "mental impressions" centers on the bad faith claim. Put another way, Plaintiff contends this information

---

[11] As discussed infra, Great American does not posit any argument in response to Plaintiff's Motion to Compel withheld documents that contain "trade secrets and confidential/proprietary information." (See Doc. No. 41.)

[12] Fed. R. Civ. P. 26(b)(3) provides, in pertinent part:

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

is relevant and will lead to the discovery of admissible evidence as to whether Great American acted in bad faith.

Initially, the Court will focus on what constitutes bad faith under Pennsylvania law in a case such as the instant one. The elements of a bad faith claim under 42 Pa. C.S.A. § 8371, supra at n.5, are discussed in Terletsky v. Prudential Property & Cas. Ins. Co., 649 A.2d 680, 688 (1994). There, the Pennsylvania Superior Court noted the following two-part test, both elements of which must be supported with clear and convincing evidence: (1) the insurer lacked a reasonable basis for denying benefits; and (2) the insurer knew or recklessly disregarded its lack of reasonable basis. Id. The Terletsky court also stated that:

> "[b]ad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Id. (citing Terletsky, 649 A.2d at 688) (citation omitted). In Count V of the Complaint, Plaintiff alleged that the following acts and omissions evidence Great American's bad faith:

a) Providing, on September 10, 2015, an initial estimate that did not include any code upgrade costs.

b) Reviewing the claim with the intent to deny or limit it and without conducting a fair, impartial and complete independent investigation, as evidenced by the email of October 2, 2015, to the Engle Martin adjuster stating: "and as you indicated in our phone conversation, it does not appear the violations relate to the fire" and that "we will need to advise the insured of our coverage concerns in this regard."

c) Plotting, conspiring and working in concert with the Engle Martin adjuster to deny all or a portion of the claim by contending that the code violations did not relate to the fire.

d) Arguing to Plaintiff, on October 2, 2015, that "the code violations are not related to the fire and the reason the artists/tenants have been denied entry is not the fire, but the code issues."

e) Arguing to Plaintiff, on October 2, 2015, that any lost income would be a direct result of the code violations and not the fire that damaged the one studio.

f) Using, in its revised estimate of February 2, 2016, a 40 percent depreciation rate instead of the 20 percent depreciation rate applied in the first estimate.

g) Using, on February 5, 2016, after Plaintiff's public adjuster pointed out the increased depreciation rate, a 33 percent depreciation rate instead of the 20 percent depreciation rate applied in the first estimate.

h) Refusing to provide Plaintiff with any explanation for applying a higher depreciation rate in subsequent estimates than applied in the initial estimate.

i) Denying coverage, on July 25, 2016, under Ordinance and Law Coverage A – Undamaged Portion, while contending that "as the undamaged parts of your building do not have to be demolished there is no loss in value to the undamaged parts of the building and Ordinance and Law Coverage A will not apply to this claim."

j) Denying the code upgrade claim, on September 11, 2016, on the ground that "most, if not all of the items relate to requirements needed to secure a Certificate of Occupancy as opposed to the expenses associated with completing the fire damage repairs."

k) Denying the code upgrade claim, on September 11, 2016, on the ground that "the policy provides coverage under Ordinance or Law for cost associated with completing the repairs and does not cover the cost of complying with recommended actions or standards that exceed the actual requirements for completing the repairs."

l) Denying the code upgrade claim, on September 11, 2016, on the ground that Great American "did not agree that there is a loss of value to the building as all of the non-compliant building components and systems existed at the time of loss, and while the City of Philadelphia may have ordered the premises to be vacated because of these non-compliant building items, since these items existed prior to the loss, [Great American] did not see a loss of value claim for the building under Ordinance or Law – Coverage A."

m) Denying the code upgrade claim again on January 11, 2017, and contending that "we are unclear how you contend the covered damage resulted in enforcement of the minimum requirements of an ordinance or law."

n) Failing, until July 14, 2017, to respond to Plaintiff's business interruption data provided by Mr. Markham[13] on June 7, 2017.

o) Contending, on July 14, 2017, that it was "having trouble reconciling the numbers of the profit and loss statements from the rent rolls."

p) Denying the code upgrade claim again on September 10, 2017.

7

q) Offering only $40,000 on the business interruption and extra expense claim on September 10, 2017.

r) Falsely stating that its $40,000.00 offer was not calculated when it had accepted the Doozer estimate for code upgrades.

s) Refusing to pay unconditionally the $40,000.00 amount not in dispute.

(Doc. No. 28 ¶ 116) (alteration in original). The Court will now address each of Great American's objections.

### 1. Reserve Information

As noted, an insurance reserve is money set aside "to satisfy obligations that may arise under a claim." Peco Energy Co. v. Insurance. Co. of N. America, 852 A.2d 1230, 1232 n.3 (Pa. Super. Ct. 2004). Pennsylvania law requires an insurance company to set reserves aside when they are placed on notice of a possible loss arising under its policy. See Keefer v. Erie Ins. Exchange, No. 13-1938, 2014 WL 201123, at *3 (M.D. Pa. Mar. 7, 2014) (quoting Fidelity & Deposit Co. of Md. v. McCulloch, 168 F.R.D. 516, 525 (E.D. Pa. 1996)).

Plaintiff argues that Great American's reserve information is relevant to its bad faith claim because:

> The amount of the reserves that the adjusters put on the claim and the time at which they did so shows the adjuster's belief that: 1) the claim was covered under the insurance policy at issue and 2) the amount that was owed on the claim. The reserves are thus admissions of facts that are directly at issue in this bad faith case.

(Doc. No. 40-2 at 3-4.) Great American disagrees, contending that the amount set aside as reserves does not establish that it expected the claim to be covered, and therefore is not "relevant to a specific issue presented in a bad faith claims." (Doc. No. 41 at 3.)

District courts within the Third Circuit are split on the question of whether insurance reserves are discoverable in bad faith cases. See e.g., Consugar v. Nationwide Ins. Co., No. 10-

---

[13] Mr. Markham is an insurance adjuster that Plaintiff hired to represent its interest in the claims.

2084, 2011 WL 2360208, at *5 (M.D. Pa. June 9, 2011) (holding that reserve information is discoverable and should be produced because it provides some evidence of value assigned by defendant to plaintiff's bad faith claim); Kaufman v. Nationwide Mut. Ins. Co., No. 97-1114, 1997 WL 703175, at *1 (E.D. Pa. Nov. 12, 1997) ("procedure for setting reserves . . . is confidential information which a court should not order to be disclosed unless the relevance of this information is clear and disclosure is necessary.")

In a recent case, Barnard v. Liberty Mutual Insurance Corp., the Middle District of Pennsylvania articulated the prevailing view, as follows:

> [R]eserves may be discoverable in a bad faith action when the claim relates to the insurer's failure to settle or where there is a discrepancy regarding the value of the claim. See e.g., Borgia v. State Farm Mut. Auto. Ins. Co., 2014 WL 4375643, at *4 n.5 (E.D. Pa. Sept. 3, 2014) (finding the reserves were relevant to the plaintiff's [underinsured motorist] claim because "the establishment of reserves would serve little, if any, purpose unless the reserves 'have some relationship to the insurer's estimation of the insured's potential liability' ") (citations omitted); Consugar, 2011 WL 2360208, at *5 ("the amount set aside for reserves 'is certainly germane to any analysis [defendant] made of' the claim's value, and of whether defendant acted in bad faith in processing the claim") (citations omitted); Oak Lane Printing & Letter Serv., Inc. v. Atlantic Mut. Ins. Co., No. 04-3301, 2007 WL 1725201, at *4 (E.D. Pa. June 13, 2007) (stating that reserves "must be relevant to a specific issue presented in a bad faith action," such as when "the insurer fails to settle or where there is a disputed issue regarding the value of the claim").

Barnard v. Liberty Mutual Insurance Corp., No. 18-1218, 2019 WL 461510 at *5 (M.D. Pa. Feb. 6, 2019).

Considering the allegations in Count V of the Complaint, the Court finds that reserve information is relevant and should be produced. As stated above, Plaintiff's bad faith claim concerns Great American's denial of its claims and the value assigned to them.

The amount Great American set aside as reserves provides evidence of the value it assigned to the claims in this case. Because Plaintiff asserts that Great American acted in bad faith, a comparison of Great American's reserve value and its actions in processing the claims, could shed

9

light on Great American's potential liability.  Consugar, 2011 WL 2360208, at *4 (M.D. Pa. June 9, 2011) (holding that the amount a defendant insurance company set aside as reserves, if any, assigned to plaintiff's underinsured motorist claim should be produced because it could potentially lead to relevant information about liability with respect to plaintiff's bad faith claim).

Accordingly, Plaintiff's Motion to Compel (Doc. No. 40) will be granted regarding the documents withheld because they contain Great American's reserve information.  Such documentation must be supplied to Plaintiff.

### 2.  Work Product and Mental Impressions

Plaintiff also demands the disclosure of Cericola's "mental impressions," contending they are "directly at issue to determine whether Great American acted in bad faith."[14]  (Doc. No. 40-2 at 6.)  Great American argues that Plaintiff's mere assertion of a bad faith claim does not raise an exception to the well-established work-product privilege, citing to Fed. R. Civ. P. 26(b)(3), supra at n.12.  The Court agrees with Great American.

The work product privilege protects the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation."  United Coal Companies v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988) ("Unlike the attorney client privilege, the work-product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)).  "[F]ederal courts have consistently ruled that the work-product doctrine is not inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer."[15]  Id.

---

[14]  As noted previously, as an employee of Engle Martin, Cericola acts as an agent of Great American.

[15]  There is no dispute that Cericola, an Engle Martin employee, acted as an agent of Great American for the purposes of this case.

10

Importantly, courts have held that a "mere claim of bad faith is not enough to "shatter the work-product privilege of Rule 26(b)(3)." See, e.g., Robertson v. Allstate Ins. Co., No. 98-4909, 1999 WL 179754, at *3 (E.D. Pa. Mar. 10, 1999); Provident Life & Acc. Ins. Co. v. Nissenbaum, No. 97-5666, 1998 WL 800323, at *1 (E.D. Pa. Nov. 17, 1998) (citing Dombach v. Allstate Ins. Co., No 98-1652, 1998 WL 633655, at *1 (E.D. Pa. Aug. 27, 1998)). It has also been recognized that the work-product privilege is not absolute and can be overcome by a showing of "substantial need" in conjunction with a showing that the "substantial equivalent" of the requested materials is unavailable. Robertson, 1999 WL 179754, at *4 (citing Hartman v. Banks, 164 F.R.D. 167, 169 (E.D. Pa.1995)). Even when such a showing has been made, however, a court must take care to protect from discovery "disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Id.

Here, there is no dispute that Cericola's mental impressions, created while he acted as an agent of Great American, fall under the work-product privilege. Aside from merely arguing that the protection of the work-product privilege should be overcome because Cericola's mental impressions are relevant to the bad faith claim, Plaintiff does not explain why they are otherwise discoverable under Rule 26. It does not articulate a substantial need for Cericola's mental impressions in order to prepare its case. Additionally, it does not even attempt to argue that the mental impressions, or a substantial equivalent, cannot be obtained by other means without undue hardship. See Garvey v. National Grange Mut. Ins. Co., 167 F.R.D. 391, 393-95 (E.D. Pa.1996) (recognizing that parties prosecuting bad faith claims can discover the "substantial equivalent" of privileged information through depositions).

In essence, Plaintiff's sole argument to compel production of Cericola's mental impressions is that they are relevant merely because this case contains a bad faith claim. It is well-

settled that this argument is insufficient to disregard the work-product privilege set forth in Rule 26. Thus, Plaintiff's Motion to Compel (Doc. No. 40) will be denied with respect to redactions and withholdings of Cericola's mental impressions.

### B. Trade Secrets and Confidential Proprietary Information

Finally, Plaintiff's Motion to Compel will be granted with respect to redactions based on trade secrets. Protection of trade secrets is governed by Pennsylvania Rule of Civil Procedure 4012, which provides in relevant part:

> (a) Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following:
>
>> (9) that a trade secret or other confidential research, development or commercial information shall not be disclosed or be disclosed only in a designated way.

Pa. R. Civ. P. 4012(a)(9). Under Pennsylvania Rule of Civil Procedure 4012(a)(9), there is no absolute privilege or unconditional bar to disclosure of trade secrets. Miller Oral Surgery, Inc. v. Dinello, 611 A.2d 232, 236 (Pa. 1992). Whether trade secrets are protected is within the discretion of the Court. Id.

On its face, Pennsylvania Rule of Civil Procedure 4012(a) plainly requires that a party seeking to protect trade secrets file a motion for a protective order. Here, Great American has taken the liberty to exclude information from its document production on the grounds that the claim notes contain trade secrets and confidential information without filing the appropriate motion for protective order in this Court. Notably, in its Opposition to Plaintiff's Motion to Compel, Great American has not contested Plaintiff's argument that redactions of trade secrets was improper. (See Doc. No. 41.) Great American has not provided any information about why the

documents contain trade secrets. This could have been accomplished without revealing the trade secrets themselves.

For these reasons, Plaintiff's Motion to Compel (Doc. No. 40) will be granted as to the documents redacted on the grounds that they contain trade secrets. If Great American still wishes to protect such information, it must file with the Court the appropriate motion for protective order.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel (Doc. No. 40) will be granted in part and denied in part. An appropriate Order follows.